# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER SPROLES, individually and on behalf of all others similarly situated,** | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:21CV00016 |
| v. | ) ) ) | **OPINION AND ORDER** |
| **GENERAL MOTORS LLC,** | ) ) | JUDGE JAMES P. JONES |
| Defendant. | ) ) | |

*Lisa S. Brook, E. Kyle McNew, and J. Gregory Webb* MICHIEHAMLETT, *Charlottesville, Virginia, Adam J. Levitt, Daniel R. Ferri, and John E. Tangren,* DICELLO LEVITT GUTZLER LLC, *Chicago, Illinois, W. Daniel "Dee" Miles, III, H. Clay Barnett, III, and J. Mitch Williams,* BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C., *Montgomery, Alabama, for Plaintiff and Proposed Class; Kathleen Taylor Sooy, April N. Ross, and Rachel P. Raphael,* CROWELL & MORING LLP, *Washington, D.C., for Defendant.*

In this products liability class action, the named plaintiff Christopher Sproles sues defendant General Motors LLC ("GM"), alleging a defective engine contained in certain GM vehicles. GM has moved under Rule 12(b)(6) to dismiss the Class Action Complaint. For the following reasons, the Class Action Complaint will be dismissed for lack of standing, with leave to amend.

I.

The purchaser of a 2013 Chevrolet Silverado, named plaintiff Christopher Sproles, brought this putative class action on February 18, 2021, on behalf of

consumers who purchased model year 2011–2014 GM vehicles, manufactured on or after February 10, 2011, each equipped with the Generation IV 5.3-liter Vortec 5300 LC9 engine (the "Generation IV Vortec 5300 Engine"). The Class Action Complaint alleges the following facts, which I must accept as true for the purpose of deciding the motion to dismiss.[1]

The Generation IV Vortec 5300 Engines suffer from a design defect primarily caused by inadequate coating around the piston rings. This defect, which causes excessive oil loss, engine damage, and ultimately engine failure, has been termed the Oil Consumption Defect. GM knew about the defect from studies it acquired from its corporate predecessor, "Old GM," reports it issued, and consumer complaints documenting excessive oil loss, engine damage, and engine failure.

---

[1] Sproles seeks to represent two classes of plaintiffs — those who purchased or leased class vehicles in Virginia, and those who purchased or leased the same anywhere in the United States. He asserts subject matter jurisdiction based on the parties' diverse citizenship, 28 U.S.C. § 1332(a), and the Class Action Fairness Act, 28 U.S.C. § 1332(d). It is alleged that the amount in controversy exceeds five million dollars and that one or more of the putative class members are citizens of a different state than GM. Compl. ¶ 22, ECF No. 1.

Other class actions against GM have been filed arising from the Oil Consumption Defect in the Generation IV Vortec 5300 Engine. Certified classes have survived summary judgment with regard to implied warranty or consumer protection claims. *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2020 WL 1955643, at *52 (N.D. Cal. Apr. 23, 2020) (California, North Carolina, and Texas implied warranty); *Siqueiros v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2021 WL 2115400, at *27 (N.D. Cal. May 25, 2021) (Idaho consumer protection). Another action has been dismissed under Rule 12(b)(6). *Tucker v. Gen. Motors, LLC,* No. 1:20-CV-254-SNLJ, 2021 WL 2665761, at *8 (E.D. Mo. June 29, 2021).

Despite this knowledge, GM took affirmative steps to actively conceal the defect from the public and made misleading or false statements that touted the engine's durability and reliability.

## A.  Oil Consumption Defect.

In gasoline-powered automobile engines, a metal piston is pushed upward and pulled downward, compressing air and fuel in a cylinder.  Once that compressed mixture is ignited by the spark plug, it creates a combustion.  That energy flows out of the cylinder's exhaust valve and powers the vehicle.

Piston are fitted with flat, circular piston rings to seal the gaps between the piston and the cylinder that houses it, providing the air-tight pressure necessary for compression and combustion.  Pistons and their rings must be coated with a thin film of oil to reduce friction, heat, and metal scarring as the metal components slide past each other in the cylinder.  Thus, the piston rings also work as an oil sealant to keep oil in the crankcase and prevent it from leaking into the combustion chamber.

Oil entering the combustion chamber can be burned in excessive quantities and the resultant oil loss will cause the vehicle's metal components to overheat, seize, and fail.  That is what the plaintiff alleges occurs in GM's Generation IV Vortec 5300 Engine.

The piston rings in the Generation IV Vortec 5300 Engine eventually lose their sealing capacity because GM coated them with an inadequate sealing material

that is supposed to prevent the ring from wearing and grinding over time. But the sealant that GM chose actually allows the piston ring to erode prematurely, permitting excessive quantities of oil to reach the combustion chamber.

In the combustion chamber, the oil contaminates and fouls the spark plugs which are responsible for providing the spark necessary for combustion. When a fouled spark plug cannot ignite combustion within a cylinder, that cylinder fails to produce power, resulting in the engine not starting, stalling, or shutting down. Moreover, oil is burned in excessive quantities in the combustion chamber, which causes reduced lubrication of the vehicle's metal components, and ultimately engine damage or failure. Compl. ¶¶ 51–63, 67, ECF No.1.

Although the piston ring coating is the primary cause of the Oil Consumption Defect, the oil loss is exacerbated by several other features of the vehicles at issue. First, the Active Fuel Management ("AFM") system, which converts engines from eight cylinders to four cylinders during light duty operation, contains an oil pressure relief valve that sprays oil at the piston rings. But since the rings are inadequately sealed, the AFM function causes more oil to escape. Second, a Positive Crankcase Ventilation ("PCV") system vacuums oil from the valvetrain into the intake system where it is ultimately burned in the combustion chamber. Finally, the Oil Life Monitoring System, oil pressure gauge, and oil cannister symbol on the dashboard

fail to alert drivers that the quantity of oil in their vehicles is low, inducing them to unknowingly drive with dangerously low oil and further damage their engines.

## B. GM's Knowledge.

Although GM knew or learned about the defect from studies, reports, and consumers, it concealed the issue from the public. Old GM first began manufacturing the Generation IV Vortec 5300 Engine in 2007 and learned of the Oil Consumption Defect as early as 2008. In the latter year, an employee named Grant Tappan conducted a root cause analysis of excessive oil consumption in the Engines. Additionally, in June 2008 Generation IV Vortec 5300 Engine consumers began making numerous complaints of excessive oil consumption to dealerships, third-party blogs, and later the National Highway Traffic Safety Administration. Specifically, they complained of using "a quart of oil a week," *Id*. ¶ 126, "burn[t] out spark plugs," *id*. ¶ 140, engine failures causing drivers to be stranded on the side of the road, *id*. ¶ 145, no oil appearing on the dipstick despite no "low-oil" warnings, *id*. ¶ 128, and "smoke" emanating from the exhaust, *id*. ¶ 136. GM was put on notice of such complaints because some were filed "against it directly," *id*. ¶ 232, others were documented in GM's warranty data reviewed by employee Steve Pfromm during 2009-2010, *id*. ¶ 110, and GM's dealers made other complaints known to it, *id*. ¶¶ 113, 232. In May 2009 GM engineer Arthur Miller opined that the excessive oil consumption "likely followed" from a defect in the piston rings. *Id*. ¶ 95.

After Old GM filed for Chapter 11 bankruptcy on June 8, 2009, this defendant emerged as its successor on July 10, 2009, and "acquired the assets of Old GM." *Id.* ¶ 39. Shortly thereafter, GM conducted two investigations of its own which confirmed what its predecessor had first discovered. First, GM launched Red X, an internal investigation into fouled spark plugs, rough running engines, and excessive oil loss. A January 2010 Executive report of that investigation concluded that "oil consumption clearly follows the piston/ring assembly." *Id.* ¶ 97. Second, GM generated a December 2012 Problem Investigation which collected widespread reports of similar complaints that had been submitted to dealerships. GM marked this document "confidential" and "withheld the findings from the public." *Id.* ¶ 113.

GM likewise concealed its knowledge about the defect from its dealerships. From August 2010 until November 26, 2014, GM issued twelve Technical Service Bulletins to dealerships, instructing them on how to address complaints about excessive oil loss, piston repairs, fouled spark plugs, and rough running in the Generation IV Vortec 5300 Engine. GM attempted to conceal the defect by recommending to its dealerships that they attempt repairs and design modifications — proposals that GM knew would be "ineffective" according to its own February 2010 5.3L LC9 Oil Consumption report, *id.* ¶ 120, as it knew the "ultimate fix" was "replacement of the piston assemblies," *id.* ¶ 119.

### C. GM's Fraudulent Statements.

Although GM knew that vehicles equipped with a Generation IV Vortec 5300 Engine suffered from excessive oil loss and premature engine failure, it falsely promoted vehicles with those engines as "safe," "reliable," and "durable" in brochures, commercials, radio advertisements, and website postings. *Id*. ¶¶ 157, 213. As relevant to the specific claims asserted in this case, GM made the following statements touting the reliability of vehicles containing a Generation IV Vortec 5300 Engine. A brochure for GM's 2010 Chevrolet Colorado stated that "every Colorado has the endurance and dependability you expect from a Chevy truck." *Id*. ¶ 154. GM claimed in a 2011 Chevrolet Silverado brochure that the vehicles were "the most dependable, long-lasting full size pickups on the road." *Id*. ¶ 156. On August 29, 2011 GM advertised on its website that "Chevrolet provides consumers with fuel-efficient, safe and reliable vehicles." *Id*. ¶ 157.

In addition to making affirmative statements, GM's failure to disclose certain facts likewise deceived customers. Specifically, GM never indicated in its marketing materials that vehicles equipped with a Generation IV Vortec 5300 Engine suffered from a fatal flaw in design and materials — the Oil Consumption Defect.

### D.  Plaintiff's Vehicle.

In November 2012, plaintiff Sproles, a citizen of Virginia, purchased a new 2013 Chevrolet Silverado equipped with a Generation IV Vortec 5300 Engine from a dealership in Coeburn, Virginia.  The vehicle came certified with GM's New Vehicle Limited Warranty.  In purchasing the vehicle, Sproles relied on unspecified commercials that he had seen promoting the reliability and durability of the Chevrolet Silverado.  Like many other customers, GM never disclosed to Sproles the purported Oil Consumption Defect in the Generation IV Vortec 5300 Engine.  If he had known about the defect, Sproles claims that he would have paid less for the vehicle or not purchased it at all.

### E.  The Present Action.

Sproles has brought this putative class action on behalf of himself and all who purchased or leased the following model year 2011-2014 GM vehicles, which are all manufactured with a Generation IV Vortec 5300 Engine: Chevrolet Avalanche, Silverado, Suburban, Tahoe, GMC Sierra, Yukon, and Yukon XL ("Class Vehicles").  Specifically, Sproles asserts claims for violation of the Virginia Consumer Protection Act (Count I), breach of express and implied warranties (Counts II and III), fraudulent nondisclosure (Count IV), violation of the Magnuson-Moss Warranty Act (Count V), and unjust enrichment (Count VI).  GM has filed a motion under Rule 12(b)(6) to dismiss the Complaint in its entirety for failure to

state a claim. Although the parties have fully briefed the motion, they have not addressed whether Sproles has standing under Article III.

Standing raises an issue of the court's subject matter jurisdiction. This is because the Constitution permits federal courts to decide only cases or controversies and a plaintiff must have standing to maintain either. U.S. Const. art. III; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).[2] Although courts generally only address claims and arguments advanced by the parties, since standing is jurisdictional, courts have an "independent obligation" to ensure the plaintiff has standing to sue "regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). Therefore, my analysis must begin with standing.[3]

II.

To establish standing under Article III, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The standing requirement applies to each

---

[2] Internal quotations, marks, citations, and alterations are omitted throughout this Opinion and Order unless otherwise specified.

[3] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

claim that a plaintiff seeks to press," and "a plaintiff must demonstrate standing separately for each form of relief sought." *Overbey v. Mayor of Balt.*, 930 F.3d 215, 230 (4th Cir. 2019). If a court determines that "no named plaintiff has standing" then it "lacks jurisdiction over the dispute" and must dismiss the case. *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019); Fed. R. Civ. P. 12(h)(3).

### A. Injury in Fact.

To establish an injury in fact, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc.*, 136 S. Ct. at 1548. A "concrete" injury is "real" and "not abstract." *Id.* For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id.* Ensuring that the named plaintiff has suffered an injury in fact guarantees that he has a "personal stake in the case," and that pursuing the action would "vindicate [*his*] interests, rather than serve solely [as] a vehicle for ensuring legal compliance." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 653 (4th Cir. 2019).

To establish an injury in fact in a defective design products liability class action, named "plaintiffs must allege that *their* product *actually exhibited* the alleged defect." *Forrest v. Polaris Indus., Inc., (In re Polaris Mktg., Sales Pracs., & Prod. Liab. Litig.)*, No. 20-2518, 2021 WL 3612758, at *3 (8th Cir. Aug. 16, 2021). "[I]t is not enough for a plaintiff to allege that a product line contains a defect or that a

product is at risk for manifesting this defect." *Id.* It is equally insufficient to simply allege "that injury has been suffered by other, unidentified members of the class." *Mayor of Balt. v. Actelion Pharms. Ltd.*, 995 F.3d 123, 133 (4th Cir. 2021).

Here, Sproles has failed to establish an injury in fact because he has not plausibly alleged that *his* vehicle has the specific defect alleged — improperly sealed piston rings. The lone factual allegation to suggest that Sproles' vehicle contains this defect is that he "has noticed his 2013 Silverado consumes an excessive amount of oil" since November 2016. Compl. ¶ 27, ECF No. 1. But the physical manifestations of the asserted defect are reportedly legion. According to the Class Action Complaint, vehicles with improperly sealed piston rings require a quart of oil or more per week, suffer from burnt or fouled spark plugs, emanate blue or black smoke from the exhaust, do not start, run roughly, stall, or fail. *Id*. ¶¶ 126–146. This invites the court to infer that because Sproles' vehicle shares a single common *effect* with other vehicles, then they must also share a common *cause* (defective piston rings).

But Sproles has not provided any factual allegations that would render such an inference reasonable. Unlike other consumers, Sproles does not claim to have done an "oil consumption test[ ] thru [his] local dealer" to "confirm the rings are leaking allowing oil to be burned." *Id.* ¶ 138. Nor has he claimed two easily-alleged and direct indications that his piston rings are not properly sealing: that oil and

carbon buildup have contaminated his spark plugs and combustion chamber. *See id.* ¶ 79, 129. Simply put, alleging that Sproles' engine uses an unspecified amount of oil is not sufficient to allege that his vehicle has defective piston rings.

Since Sproles has failed to allege a defect in his vehicle, he has no injury in fact to support any of his claims. Indeed, Sproles' requested damages in each count of the Complaint is predicated on a single injury: his overpayment for a defective vehicle that did not conform to GM's warranties or statements of fact.[4] Thus, any "diminution" in his vehicle's value, or "actual damages" for which he seeks to be recompensed would be contingent upon his purchase of a defective vehicle. Compl. ¶¶ 280, 215, ECF No. 1. But Sproles has simply alleged that his vehicle *may* contain a defect. This speculative or hypothetical injury cannot support any of his claims. *See In re Polaris Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2021 WL 3612758, at *3 (class plaintiffs seeking to recover for engine design defect failed to establish injury in fact absent allegations that their vehicles manifested the commonly reported symptoms or in any way "exhibited the alleged defect.").

---

[4] Count I seeks "actual damages" for fraudulent nondisclosure of facts related to the sale of his vehicle in violation of the VCPA. Compl. ¶ 205, 215. Counts II and III request all damages proximately flowing from breach of warranties related to his vehicle. *Id.* ¶¶ 237, 249. Count IV prays to recover damages for overpayment on fraud claim. *Id.* ¶ 259. Count V requests that GM disgorge the "artificially inflated" purchase price of the vehicle for unjust enrichment claim. *Id.* ¶ 261; *see id.* ¶ 266. Count VI seeks "diminution" of his vehicle's value for Magnuson-Moss Warranty Act claim. *Id.* ¶ 280.

B. Traceability.

What is more, the Complaint's factual allegations do not establish that the oil consumption in Sproles' vehicle is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  To establish traceability in this context, a plaintiff must plausibly allege that they suffered an injury "because of the defect." *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 377–78 (6th Cir. 2015) (unpublished).

Although Sproles invites the inference that his vehicle's oil consumption is caused by GM's design defect, he does nothing to connect the two.  Sproles has not alleged, as other consumers have, that a mechanic has inspected his vehicle and told him that GM's "piston rings" are "the issue" causing the oil loss.  Compl. ¶ 141, ECF No. 1.  Indeed, the Complaint does nothing to indicate that Sproles' oil loss is due to defective piston rings that GM installed, or any other choice that GM made in design or materials.  He claims to suffer from an isolated issue which could have many plausible diagnoses — some wholly unrelated to GM's design of his engine.  For example, the Complaint leaves it to guesswork as to whether Sproles has driven his vehicle 200 or 200,000 miles; suffered extensive damage beyond normal wear and tear; or whether a third party has ever serviced his engine.  Without more, Sproles has not met his burden to show that the oil usage in his vehicle has been

caused by GM's design rather than his own conduct or that of a third party. Therefore, he has not plausibly alleged traceability.

In sum, Sproles has failed to establish two elements of standing. First, he has not established an injury in fact because he has not plausibly alleged that his vehicle is defective — the basis of his purported injury. Second, he has failed to establish that any oil issue currently plaguing his vehicle can be fairly traced to GM's conduct. Whatever defect GM's Generation IV Vortec 5300 Engine may have, Sproles has not shown at this point that he has standing to bring this suit to recover for it.

### III.

For the foregoing reasons, the Class Action Complaint is DISMISSED. The Motion to Dismiss, ECF No. 21, is terminated as moot. The plaintiff is granted leave to file an Amended Class Action Complaint, if he can, provided it is filed no later than 21 days from this date. If no such Amended Class Action Complaint is timely filed, this action will be dismissed without prejudice.

It is so **ORDERED**.

ENTER: September 13, 2021

/s/ JAMES P. JONES
Senior United States District Judge